# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Yolanda Cameron,<br><br>Plaintiff,<br><br>v.<br><br>Paramount Acceptance Corporation<br><br>Defendant. | Case No.<br><br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE TELEPHONE CONSUMER PROTECTION ACT, THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, Yolanda Cameron ("Yolanda"), is a natural person who resided in Matteson, Illinois, at all times relevant to this action.

2. Defendant, Paramount Acceptance Corporation ("Paramount"), is a Utah corporation that maintained its principal place of business in Salt Lake City, Utah, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4. Pursuant to 28 U.S.C. §1367(a), the Court also has Supplemental Jurisdiction over Plaintiff's claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"),

815 ILCS 505/1 *et seq.,* because they share a common nucleus of operative fact with Plaintiff's claims under the FDCPA.

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

6. Paramount regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

7. The principal source of Paramount's revenue is debt collection.

8. Paramount is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9. At all relevant times, Paramount was engaged in "trade" and "commerce" as defined by 815 ILCS 505/1(f).

10. As described, *infra*, Paramount contacted Yolanda to collect a debt that was incurred primarily for personal, family, or household purposes.

11. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

12. Yolanda is a "consumer" as defined by 15 U.S.C. § 1692a(3) and 815 ILCS 505/1(b).

13. Paramount's services constitute "merchandise" as defined by 815 ILCS 505/1(b).

14. Before Paramount began contacting Yolanda, it and Yolanda had no prior business relationship and Yolanda had never provided express consent to Paramount to be contacted on her cellular telephone.

15. On information and belief, a relative ("Relative") of Yolanda's signed up for a gym membership.

16. On information and belief, at the time of enrollment, Relative used Yolanda's mobile telephone number as Relative's contact information.

17. Yolanda had never permitted Relative to use Yolanda's telephone number or Yolanda cellular phone.

18. Relative is not, nor was ever, a regular or authorized user of Yolanda's mobile phone.

19. On information and belief, Relative neglected to pay their gym membership dues and the debt became past due.

20. On information and belief, Paramount was assigned Relative's debt to collect.

21. Paramount's policies and procedures for processing account data received from original creditors fail to identify easily discoverable errors and avoid the needless harassment of undeserving consumers like Yolanda.

22. Paramount's policies and procedures failed to discover that the number Relative provided did not belong to Relative.

23. Paramount unreasonably relied upon inaccurate information provided to Paramount by one (1) or more original creditors for whom Paramount was attempting to collect a debt when Paramount called Yolanda's cellular telephone.

24. As such, in furtherance of those policies and in connection with the collection of the debt, Paramount began bombarding Yolanda's cellular phone with unsolicited text messages, prerecorded and/or artificial voice messages and robocalls using a prerecorded and/or artificial voice.

25. Paramount placed many of these after Yolanda informed Paramount that Relative was unreachable by using Yolanda's cellular phone number.

26. Many of these were placed after Yolanda demanded Paramount cease contacting her.

27. On at least one occasion, Paramount demanded payment from Yolanda for Relative's debt and falsely claimed that Yolanda was legally responsible for the debt.

28. Paramount's policies and procedures violate the FDCPA.

29. Paramount's collection efforts, including but not limited to its telephone calls, caused Yolanda emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

30. Yolanda's collection efforts also intruded upon Yolanda's privacy.

31. Each time Paramount placed a telephone call to Yolanda, Paramount occupied Yolanda's telephone number such that Yolanda was unable to receive other phone calls at that telephone number while Paramount was calling her.

32. Paramount's debt collection telephone calls also forced Yolanda to lose time by having to tend to Paramount's unwanted calls.

33. Paramount's numerous prohibited debt collection voice messages also clogged Yolanda's voicemail box which prohibited other welcome callers from leaving likely important and time sensitive voicemails.

34. Paramount's violations of the FDCPA, specifically as a result of their false statements and abuse, caused Yolanda to expend additional time consuming considerable digital content on the internet which clogged Yolanda's computer's Random Access Memory (RAM), added undesirable and unavoidable cookies to her internet browser, caused her to incur additional out of pocket energy expenses, forced her to incur higher than usual internet bandwidth usages and to increase her carbon footprint.

## COUNT ONE

**Violation of the Fair Debt Collection Practices Act**

35. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 34 above as if fully set forth herein.

36. Defendant violated 15 U.S.C. § 1692c(a)(1) by calling Plaintiff at a time or place known to be inconvenient for Plaintiff.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

37. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 34 above as if fully set forth herein.

38. Defendant violated 15 U.S.C. § 1692c(c) by communicating with Plaintiff with respect to the debt notwithstanding its receipt of written instructions to cease communications with Plaintiff.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

39. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 34 above as if fully set forth herein.

40. Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the debt.

## COUNT FOUR

### Violation of the Fair Debt Collection Practices Act

41. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 34 above as if fully set forth herein.

42. A debt collector's intent to violate the FDCPA may be inferred by its maintenance of policies and procedures which, in themselves, violate the FDCPA. *See Anchondo v. Anderson, Crenshaw & Associates, L.L.C.,* 256 F.R.D. 661, 671 (D.N.M. 2009); s*ee also Kromelbein v. Envision Payment Sol., Inc.*, 2013 WL 3947109, *7 (M.D. Penn. Aug. 1, 2013)("company

policy can be just as much a violation of [FDCPA] as the rogue act of an individual employee. If anything, a company policy that violates the FDCPA is a more egregious transgression because it indicates endemic, rather than isolated, disregard for debtor rights."); *citing Edwards v. Niagara Credit Sol., Inc.*, 586 F. Supp. 2d 1346, 1354 (N.D. Ga. 2008) (awarding maximum damages in part because conduct was company policy, thereby making it routine and frequent).

43. Defendant's policies and procedures, as described, *supra*, constitutes "conduct the natural consequence of which is to harass, oppress, or abuse" consumers.

44. Defendant's practice, therefore, violates Section 1692d of the FDCPA, which provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

*See* 15 U.S.C. §1692d.

45. Because Defendant's practice, in itself, violates the FDCPA, it reflects an intent to harass consumers generally.

46. Defendant violated 15 U.S.C. § 1692d(5) by causing Plaintiff's telephone to ring or engaging Plaintiff in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass Plaintiff.

## COUNT FIVE

### Violation of the Fair Debt Collection Practices Act

47. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 34 above as if fully set forth herein.

48. Defendant violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## COUNT SIX

### Violation of the Fair Debt Collection Practices Act

49. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 34 above as if fully set forth herein.

50. Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT SEVEN

### Violation of the Telephone Consumer Protection Act

51. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 34 above as if fully set forth herein.

52. Senator Fritz Hollings, the original sponsor of the TCPA, stated:

> Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

137 Cong. Rec. 30,821 (1991).

53. The TCPA provides, in part:

> (b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—
>
> > (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
> >
> > > (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
> > >
> > > \* \* \*
> > >
> > > > (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio

> common carrier service, or any service for which the called party is charged for the call…

47 .S.C. §§ 227(b)(1)(A)(iii).

54. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, pp 40-41, ¶¶ 72-73.

55. Plaintiff was the "called party" in each telephone call Defendant placed to a Plaintiff's cellular telephone.

56. Defendant violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an artificial or prerecorded voice to call Plaintiff on her cellular telephone without Plaintiff's prior express consent or after such consent had been revoked.

57. Defendant's utilization of prerecorded messages brings its conduct within the ambit of the TCPA. Defendant caused Plaintiff to experience prerecorded voice messages on calls Plaintiff answered, as well as leaving Plaintiff prerecorded voicemail messages on Plaintiff's cellular phone.

58. In addition, The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

59. The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

60. In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. See *Roylance v. ALG Real Est. Servs., Inc*. 2015 U.S. Dist. LEXIS 44930, *31 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310, *21-22 (N.D. Ill. Mar. 19, 2013); *Steward v. Regent Asset Mgmt. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 50046, *18-20 (N.D. Ga. 2011).

61. Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. See *Bridgeview*, 2013 U.S. Dist. LEXIS, at *21-22; see also *Roylance*, 2015 U.S. Dist. LEXIS, at *31 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

62. Defendant voluntarily placed telephone calls to Plaintiff's cellular telephone number using an ATDS and/or an artificial or prerecorded voice.

63. In addition, a company that places telephone calls using an ATDS and/or an artificial or prerecorded voice bears a responsibility to place intermittent live verification calls to ensure the subscriber being called has provided his or her express consent to be called. See *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1322 (S.D. Fla 2012); *aff'd* 755 F.3d 1265 (11th Cir. 2014).

64. Defendant failed to adequately place intermittent live verification calls to Plaintiff's cellular telephone number to ensure that Plaintiff had provided her express consent to Defendant to call those telephone numbers.

65. Defendant's violations of 47 U.S.C. § 227(b)(1)(A) were willfully and knowingly made.

66. Defendant violated the TCPA by placing numerous phone calls to Plaintiff's cellular phone using pre-recorded messages without her consent.

## COUNT EIGHT

**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**

67. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 34 and Paragraphs 51 through 66, above as if fully set forth herein.

68. The ICFA states:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

69. It was unfair for Defendant to harass Plaintiff with telephone calls, sometimes multiple times a day, in regards to an unrelated party allegedly being past due on the subject consumer debt.

70. Defendant violated 815 ILCS 505/2 through the unfair and deceptive nature of its conduct in relation to Plaintiff.

71. Defendant further violated 815 ILCS 505/2 by making numerous telephone calls to Plaintiff after Plaintiff expressed they were calling the wrong party and/or telephone number.

72. Moreover, Defendant violated 815 ILCS 505/2 by using prerecorded messages to contact Plaintiff, despite her demand that Defendant not call her at all.

73. Moreover, Defendant violated 815 ILCS 505/2 by demanding Plaintiff pay a debt that she was not legally obligated to pay.

74. The ICFA was designed to protect consumers, such as Plaintiff, from the exact behavior committed by Defendant.

75. The ICFA further states:

    "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10a.

76. Plaintiff has suffered significant actual damages resulting from Defendant's unlawful practices, including both out of pocket expenses, as well as emotional pain and suffering.

## JURY DEMAND

77. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

78. Plaintiff prays for the following relief:

    a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b. An order enjoining Defendant from placing further telephone calls to Plaintiff's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

    c. Judgment against Defendant for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call Defendant made in violation of the TCPA.

    d. Awarding Plaintiff damages of at least $500.00 per phone call and treble damages pursuant to 47 U.S.C. §§ 227(b)(3)(B) and 227(b)(3)(C); in addition to damages under 47 U.S.C. § 227(d)(3)(A)(1).

    e. Judgment against Defendant for actual and punitive damages as provided under 815 ILCS 505/10a(a).

    f. Judgment against Defendant for costs and reasonable attorney fees as provided under 815 ILCS 505/10a(c).

    g. For such other legal and/or equitable relief as the Court deems appropriate.

                                                 RESPECTFULLY SUBMITTED,

Date: August 16, 2022           By: /s/ Jeffrey S. Hyslip
                                          Jeffrey S. Hyslip, Esq.
                                          Hyslip Legal, LLC
                                          207 S. Harrison Street, Suite A
                                          Algonquin, IL 60102
                                          Phone: 614-362-3322
                                          Email: jeffrey@hysliplegal.com

                                          *Attorney for Plaintiff*